UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                                                    Case No:  6:18-cv-842-Orl-41DCI

**2015 MASERATI, VIN
'35;ZAM57RTA9F1152142,**

      **Defendant.**

_____

**REPORT AND RECOMMENDATION**

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT (Doc. 12)** |
| **FILED:** | **August 17, 2018** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

**I.  Background.**

On May 31, 2018, the government filed a Verified Complaint for Forfeiture In Rem (the Complaint). Doc. 1. In the Complaint, the government alleged that on December 12, 2017, Homeland Security Investigations (HSI) seized a 2015 Maserati, VIN #ZAM57RTA9Fl152142 titled in the name of Jenay Davis (the Defendant Vehicle) while executing a search warrant at a residence in Orange County, Florida. *Id*. at ¶¶ 1, 5, 10-16. The government alleged that the "Defendant Vehicle is subject to forfeiture to the United States pursuant to 21 U.S.C. § 88l(a)(6) because it constitutes proceeds traceable to a violation of the Controlled Substances Act, in

violation of 21 U.S.C. §§ 841 and/or 846." *Id*. at ¶ 7; *see also* ¶¶ 8-27. The Defendant Vehicle was in the government's possession. *Id*. at ¶ 5. Thus, the government sought forfeiture of the Defendant Vehicle. *Id*. at 9-10.

On May 31, 2018, the government filed a Motion for Issuance of Warrant of Arrest In Rem. Doc. 2. The government requested that the Court enter an order directing the Clerk to issue the "Warrant of Arrest In Rem for the Defendant Vehicle" (Doc. 2-1), which the government attached to the Motion. Doc. 2.

The Court issued a warrant of arrest *in rem* on June 1, 2018. Docs. 4; 5. Thereafter, the government complied with Federal Rule of Civil Procedure Supplemental Rule G(4)(a)(i)-(iv) by posting a notice of this civil forfeiture action on its official website, www.forfeiture.gov, for a period of 30 consecutive days. Docs. 7; 12 at 5-6. The government also complied with Supplemental Rule G(4)(b) by sending notice of this civil forfeiture action to the only potential claimant, Jenay Davis, by sending the notice via certified and first-class U.S. Mail on June 12, 2018. Doc. 12 at 6. The notice stated that Ms. Jenay was required to file a verified claim within 35 days after the date of the notice. *Id*. On July 16, 2018, the notice sent by certified mail was returned as "return to sender - unclaimed - unable to forward" but the one sent via first-class mail was not returned as undeliverable. *Id*. Ms. Davis failed to file a timely statement of right or interest, and the time for her to file a claim or otherwise contest the forfeiture of the Defendant Vehicle has expired.

On August 7, 2018, the government filed a Motion for Clerk's Entry of Default as to Ms. Davis, and on August 8, 2018, pursuant to Fed. R. Civ. P. 55(a), the Clerk entered a Default as to Ms. Davis for the Defendant Vehicle. Docs. 9; 10; 11. On August 17, 2018, the government filed a motion for default judgment. Doc. 12 (the Motion).

**II.     Discussion.**

In the Complaint, the government made the following factual allegations, among others, which the government now relies upon in the Motion:

a.  In August 2017, HSI, in conjunction with Seminole County City County Investigative Bureau began an investigation into the narcotics distribution and money laundering activities of Quentin Wilson and others. As a result of the investigation, search warrants were obtained from a state court judge for four residential addresses located in Orlando. Those warrants were executed on December 12, 2017.

b.  During the execution of a search warrant for a residence located on Islander Avenue in Orlando, agents discovered approximately 132 grams of cocaine inside a black bag next to approximately $16,119.00, which was bound together by rubber bands, five cell phones, a Glock 27 .40 caliber semi- automatic handgun and 30 rounds of .380 caliber ammunition.

c.  During the execution of the search warrant at Wilson's primary residence in Apopka, agents seized approximately $276,784.01, an electronic money counter, approximately 32 cell phones, a Black Hi Point .45 caliber semi-automatic handgun with a loaded magazine, and approximately 87 grams of cocaine. The cocaine was located in the console of a rented Toyota Sequoia, which was parked in the driveway. Wilson was standing near the vehicle at the time of his arrest.

d.  The rifle was located in a box underneath the bed in the master bedroom. The money was found throughout the master bedroom – underneath a pillow on the bed, in the closet in a cloth Christian Louboutin bag and a Bally purse, inside a letter-sized envelope inside a shoebox, and inside a black Versace bag hidden behind clothes – in between the driver's seat and center console of the Toyota Sequoia, and inside of a back pack in the back seat of the Toyota Sequoia.

e.  During the execution of a search warrant for a residence located on Azalea Cove Circle (Wilson's secondary residence), agents seized approximately 144 grams of heroin found on a shelf in the laundry room, approximately 482 grams of heroin found in a kitchen cabinet, and approximately 436 grams of cocaine found on top of the refrigerator in the kitchen.

f.  Agents also discovered 5 digital scales, a money counting machine, and two different kilogram presses. The kilogram presses were discovered in the laundry room closet and in a kitchen cabinet. In addition to the drug paraphernalia, agents discovered mail addressed to Wilson.

g.  Agents also seized an Infiniti QX70.  Inside the Infiniti QX70 agents discovered approximately 730 grams of heroin, a Tapco SKS 7.62X39 caliber rifle, and one magazine loaded with ammunition.

h. Lastly, agents seized the **Defendant Vehicle** – a Maserati Q4 – Registered to **Janay Davis**.

i. **Davis** was present at the Azalea Cove Circle residence when it was searched. She voluntarily agreed to speak with agents. **Davis** stated that she had known Wilson since July 2017 and had met him through a friend. Around the same time, they started a sexual relationship.

j. **Davis** indicated that Wilson gave her permission to stay at the Azalea Cove Circle residence, and she had been staying there at least two nights a week since October 2017. Although the residence was owned by one of Wilson's friends, **Davis** paid the bill for a security system (because she typically stayed at the residence by herself); all other bills and expenses were paid for by Wilson.

k. **Davis** told agents that Wilson gave her the **Defendant Vehicle** sometime in August 2017 because she wanted it and she was Wilson's girlfriend. However, **Davis** indicated that Wilson was the primary driver of the [**Defendant Vehicle**].

l. **Davis** stated that the only monetary payment she had made towards the **Defendant Vehicle** was to transfer the registration into her name. According to the Florida Driver and Vehicle Information Database, Davis registered the **Defendant Vehicle** in her name on July 29, 2017.

m. When pressed further about the **Defendant Vehicle**, **Davis** stated it was hers and she had paid for the car. She then elaborated by stating that she paid for the **Defendant Vehicle** based on her relationship with Wilson, and that the **Defendant Vehicle** was hers due to "services rendered." When asked by agents what "services rendered" meant, **Davis** admitted that she paid for the **Defendant Vehicle** in "booty." **Davis** further admitted that she had not been intimate with Wilson in two months.

n. **Davis** also stated that she had been unemployed since October 4, 2017. Prior to that, **Davis** was employed as a scheduler for Kelly Services where she would schedule subcontractors. **Davis** stated that she had earned approximately $40,000 in the last year, but was currently living off a $20,000 inheritance she obtained from her grandfather.

o. While searching the residence, agents also located a 2012 Mercedes Benz. The Mercedes was also registered to **Davis**. **Davis** indicated that she paid $25,000 for the down payment for the Mercedes at the time of purchase (August 15, 2015) and continued to pay $316/month towards the five year loan on the vehicle.

p. After the **Defendant Vehicle** was seized by HSI, a vehicle inventory was conducted. During the inventory search, agents discovered a loaded Black Taurus .40 caliber handgun underneath the front passenger seat of the vehicle.

  q. According to information learned through the investigation, the insurance policy for both the **Defendant Vehicle** and **Davis**' Mercedes is held by Mau'rell Willis. The policy for the **Defendant Vehicle** was effective on August 9, 2017.

  r. According to the Certificate of Title, title was transferred to **Davis** on June 15, 2017. Additionally, the previous owner was allegedly paid $45,000 for the **Defendant Vehicle**. The previous owner of the **Defendant Vehicle** was listed as Lerone Bernard Butler on the title.

  s. A search of an HSI database revealed that Butler had a previous encounter with HSI. Specifically, on June 21, 2013, approximately $144,000 was seized from several cars traveling from South Florida to the Middle District of Florida in an attempt to purchase four kilograms of cocaine. Butler was driving the counter surveillance "trail" vehicle. The "trail" vehicle is responsible for making sure that the narcotics transaction takes place, *i.e.,* that the money is delivered to the right person. The "trail" vehicle would typically follow the narcotics back to the purchaser's stash location, to ensure the narcotics arrived without interference from theft or rival narcotics organizations. Butler has an extensive criminal history, to include felony convictions for conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846 and attempted murder.

Doc. 12 at 2-12 (citing Doc. 1 at 3-9) (emphasis added).

In general, a court may enter a default judgment when the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Thus, to support an entry of default judgment in a civil forfeiture case, a complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." See Fed. R. Civ. P. Supp. Rule G(2)(f); *United States v. $134,972.34 Seized from FNB Bank, Account Number—5351*, 94 F. Supp. 3d 1224, 1229-30 (N.D. Ala. 2015) (explaining that the heightened pleading standard of Supplemental Rule G(2) applies in civil forfeiture cases, not the *Twombly/Iqbal* pleading standard from Rule 8, although the *Twombly/Iqbal* standard may provide guidance in deciding a motion to dismiss a civil asset forfeiture complaint to the extent it does not conflict with Supplemental Rule G(2)).

Upon review of the Motion and the Complaint, the undersigned finds that the facts alleged in the Complaint, some of which are summarized in the Motion and set forth in the foregoing paragraphs, support a reasonable belief that the government will be able to meet its burden of proof at trial and show that the Defendant Vehicle constitute proceeds or is traceable to proceeds of federal controlled substance offenses and, thus, is subject to forfeiture under 21 U.S.C. § 881(a)(6). Notice was provided in accordance with Supplemental Rule G(4)(a) and (b), and no claims or answers have been timely filed. Accordingly, it is respectfully recommended that the Court find that the United States is entitled to entry of a default judgment of forfeiture, pursuant to Fed. R. Civ. P. 55(b)(2).

### III. Conclusion.

It is respectfully recommended that the Motion (Doc. 12) be **GRANTED**, and the Clerk of Court be **DIRECTED** to enter a default judgment forfeiting to the United States all right, title, and interest in the Defendant Vehicle and, thereafter, to close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on September 10, 2018.

_____
DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy